<div align="center">SPENCER <i>against</i> SOUTHWICK.</div>

An argumen-     THIS was an action for a libel, published by the defendant in
tative plea is
good on a ge-   the *Albany Register*. The libellous publication, which was set
neral demur-
rer. Certainty  forth in the declaration, with the requisite *innuendoes*, was as fol-
to a common
intent is suffi- lows: "His (meaning the editor of a certain newspaper called the
cient in a spe- *Albany Republican*) assurance that a considerable portion of his
cial plea; and
this certainty  paper shall be devoted to the support of religion, &c. excites in
is what, on a
fair and rea-   my mind strong suspicions. I beg it may be remembered that
sonable con-    by hypocritical cants of this description, Judge *Spencer* and his
struction, may
be called cer-  associates, effected the incorporation of the *Manhattan* bank, in
tain, without
recurring to    which the judge's share of the profits was several thousand dol-
possible facts. lars. With this knowledge of the policy of the judge, I cannot
but believe that this assurance is calculated to deceive and impose
upon mankind. It is a fact of public notoriety, that when the *Man-
hattan* bill passed the senate, Judge *Spencer* claimed to be a dis-
tinguished member of that body. The preamble of the bill stated,
that "whereas by the blessing of God, the introduction of pure

and wholesome water into the city of *New-York*,' &c. The deception succeeded, and not more than ten members of the legislature knew that the bill contained a clause that would authorize the company to carry on the banking business. It is not a little extraordinary that a similar hypocritical pretence should be resorted to for the purpose of giving currency to a newspaper. It is, to my mind, conclusive evidence, that this artful, deceptive prospectus has a clear right to claim Judge *Spencer* for its legitimate father; whether this attempt at deception will succeed as well as that in relation to the *Manhattan* bank remains yet to be determined. Of one thing I am certain; it will not put so much money into the judge's pocket. Thus much for the prospectus."

The defendant pleaded in bar, that before writing, printing and publishing the alleged libel, to wit, on the 2d of *April*, 1798, the plaintiff was one of the *senators* from the middle district in this state ; and that an act of incorporation was passed by the legislature, entitled " An act for the supplying the city of *New-York* with pure and wholesome water ;" the preamble to which law, and the first section thereof, were in the words following, (setting forth the preamble and first section,) and which law also contained the following clause. " 8. *And be it further enacted*, that it shall and may be lawful for the said company to employ all such surplus capital as may belong, or accrue to the said company, in the purchase of public or other stocks, or in any moneyed transactions, or operations, not inconsistent with the constitution and laws of this state, or of the *United States*, for the sole benefit of the said company."

And the defendant averred, that at the time of passing the said law, to wit, on the 1st of *April*, &c. the plaintiff, as one of the senators of the middle district, advocated and supported the same, well knowing, at the same time, that the said law contained a clause to authorize the said company to establish a bank, and to carry on banking business; and the defendant further averred, that at the time the said law passed, but a very small portion of the members of the legislature, to wit, not more than ten, knew that the said law authorized the said company to establish a bank, and to carry on banking business; and the defendant further averred, that he had good reason to believe that the plaintiff well knew that a large majority of the members of both branches of the legislature were totally ignorant that the said law authorized the said company to establish a bank, and to carry on banking

business, at the time the same was passed as aforesaid, and that the plaintiff did not, in a public manner, publish and make known to the members of the senate, all the powers granted to the aforesaid company, by the said law, as it was his bounden duty, as senator, to have done; and the defendant further averred, that at the time and place, &c. the plaintiff held, and was owner of, a large portion of the stock created by the said law, to wit, the sum of 5,000 dollars, and that he made a large profit thereon, to wit, the sum of 500 dollars, all which actings and doings of the plaintiff, &c. the defendant averred were hypocritical and deceptive, and contrary to his duty as one of the senators, &c. and which the defendant is ready to verify, &c.

To this plea the plaintiff demurred, and the defendant joined in demurrer.

*Parker* and *Skinner*, in support of the demurrer, contended, that the plea was argumentative, and by way of rehearsal. It should have stated the facts in positive and direct terms. It is intended as a bar to the whole declaration, and it does not meet the charge of the plaintiff.*

* 1 *Saund.* 28.
n. 3. 1 *Chit-ty's Plead.*
510. 518, 519.

If a member of the legislature approves of a bill, it is sufficient for him to vote for it. He is not bound to give his reasons, or to explain his understanding or construction of its language and meaning. The demurrer admits only what is well pleaded.

*Foot*, contra, insisted, that by the demurrer, not only the facts, but all reasonable and fair inferences from those facts, were admitted. It was like a demurrer to evidence.† It was not necessary for the defendant, in his justification, to prove the facts literally true. It is enough if he proves them substantially.‡

† 5 *Johns.*
*Rep.* 28. 2 *H.*
*Bl.* 205.

‡ 7 *Johns.*
*Rep.* 264.
*Croswell* v.
*Thomas,* 1
*Johns. Cas.*
279.

KENT, Ch. J. (*absente* SPENCER, J.) delivered the opinion of the court. The *gist* of the libel consists in charging the plaintiff with hypocrisy, and a want of fidelity in his trust, as a senator, in effecting the incorporation of the *Manhattan* company, in which he was largely and profitably interested. The plea in justification of the charge states, that the plaintiff was a senator at the time of the passage of the bill, and that he advocated and supported it, and was, at the time, largely interested in its stock, and on which he made a great profit; that he knew that the bill contained a clause giving power to institute a bank, and that only a very small portion of the

legislature, not exceeding ten in number, knew of that fact, and that the plaintiff had good reasons to believe that he well knew that a large majority of both houses were totally ignorant of the fact, and that he did not disclose and make it known to the senate. To this plea the plaintiff put in a general demurrer, and the question is, whether the facts in the plea are not sufficiently averred, and whether they do not amount to an answer to the whole charge contained in the declaration. We cannot perceive any charge in the libel to which the plea is not a substantial answer, provided the plaintiff's knowledge that the legislature were ignorant of a banking power lurking in the bill be sufficiently averred.

NEWYORK,
Oct. 1812.

SPENCER
v.
SOUTHWICK.

That knowledge is averred only by way of argument and inference, and not directly, and the plea would, therefore, have been bad on special demurrer. A plea should be a statement of facts, and not of argument. But an argumentative plea is good on general demurrer. (*Com. Dig.* tit. *Pleader*, E. 3. *Bac. Abr.* tit. *Pleading*, I. 5. *in notis*.) The plaintiff's knowledge, in this case, is argumentatively stated. Certainty to a common intent is sufficient in a special plea; and certainty even to a certain intent, according to Mr. Justice *Buller*, means that which, upon a fair and reasonable construction, may be called certain, without recurring to *possible* facts; for when words are used which will bear a natural sense, and also an artificial one, or one to be made out by argument, or inference, the natural sense shall prevail. (*Buller*, J. in *King* v. *Lyme*, *Doug.* 159. and *Dovaston* v. *Payne*, 2 H. Bl. 530.) It is possible that the plaintiff might have had good reasons to believe, and yet not have believed; and that he might have had good reasons to believe that he well knew, and not have well known, or even imperfectly known, the truth before him. The force of any impression to be made upon the mind, from the operation of good reasons to be presented to it, will undoubtedly depend, in some degree, upon the character and discipline of that mind, and the existence of passions and biasses which may impede or facilitate the progress of truth. But I cannot conceive that any person of a sound and intelligent understanding can have *good reasons to believe that he well knows a fact*, and yet not feel and act under the influence of that impression. To a common intent, and upon a reasonable construction, that averment charges the plaintiff with knowledge of the fact, not, indeed, directly, but argumentatively. When a man has good reasons to believe that he well knows a fact, it amounts to *notice* of the fact sufficient to

NEWYORK, charge him with a knowledge of it, and to hold him responsible,
Oct. 1812. not only as a moral agent, but in law, for the consequences of
JACKSON such knowledge.
v.
MURCH.            The court are, accordingly, of opinion, that the defendant is
entitled to judgment, with leave, nevertheless, to the plaintiff to
withdraw his demurrer and reply, on the usual terms.

                                    Judgment for the defendant.